THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. EDUARDO MEDINA WALKER, k/a PORFIRIO, Defendant and Appellant.

No. CR-63-330. Decided June 17, 1964.

634

*Víctor Velasco Gordils* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

On January 22, 1962, Eduardo Medina Walker, appellant herein, was charged with and convicted of burglary in the first degree, consisting, as recited in the information, in having entered at nighttime the house of Primitivo Díaz Vázquez with the intent to commit larceny or petty theft. He was sentenced to serve from two to five years' imprisonment in the penitentiary at hard labor.

On appeal, he alleges that the trial court committed three errors consisting in (1) "overruling the question of law raised by the defense to the effect that the place allegedly burglarized is not covered by the statute punishing burglary"; (2) refusing to transmit an instruction on "what constitutes a house"; (3) not acquitting the defendant, since there was a fundamental variance between the information and the evidence.

 (1) In support of the first assignment it is argued, briefly, that in order to sustain an information of burglary of a *"house,"* the structure must be inhabited by people and consist of four walls and a roof; that in this case the habitation was not established and the evidence showed that the house was under construction. Section 408 of the Penal Code (33 L.P.R.A. § 1591),[1] which defines and establishes the offense of burglary, is taken from § 459 of the Penal Code of California. In *People* v. *Stickman,* 34 Cal. 242, 244 (1867), in support of an information of burglary evidence was introduced to the effect that defendant broke into a chicken pen, at nighttime, with intent to steal domestic fowls. In sustaining the information, the court said that by the 1858 amendment the broader phrase "any house, room, apartment, or tenement" was substituted for the phrase "any dwelling house, or any other house whatever." The court added in this case: ". . . we think that the absence of more particular terms of description indicates an intention, on the part of the Legislature, to include every kind of buildings or structures 'housed in' or roofed, *regardless of the fact whether they are at the time, or ever have been, inhabited by members of the human family. A house, in the sense of the statute, is any structure which has walls on all sides and is covered by a roof."* (Italics ours.) This case has been cited to the same effect in *People* v. *Coffee,* 198 Pac. 213 (Cal. 1921), and in *People* v. *Gibbons,* 273 Pac. 32 (1928). The decisions cited by appellant, particularly the cases of *People* v. *Clinton,* 233 Pac. 78 (Cal. 1924), and *People* v. *Higbee,* 233 Pac. 79 (Cal. 1924), are predicated on the old common-law doctrine and on statutes specifically providing with respect to *"dwelling"* instead of *"house,"* or where § 460 of the Penal Code of

---

[1] "Every person who enters any house, room, apartment, tenement, shop, warehouse, store, barn, stable, outhouse, or other building, tent, vessel or car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary."

California is applied, as amended in 1923 for the purpose of providing that the act, among others, of burglarizing at nighttime an *inhabited dwelling* constitutes burglary in the first degree. Therefore, those decisions do not support nor constitute authority respecting appellant's contention. The doctrine of *Stickman, supra,* is applicable in this jurisdiction, particularly since it is evident that under the Penal Code the offense of burglary is an offense against the property rather than against the dwelling, unlike the common-law provision and that prevailing under the corresponding penal statute of other jurisdictions. Where the Penal Code has intended to provide otherwise, this has been accomplished clearly and specifically, as was done in establishing as a requirement for the offense of arson in the first degree that the building object of the offense be inhabited at night by some tenant or dweller. Section 405 of the Penal Code (33 L.P.R.A. § 1568). As to whether the structure had four walls and a roof, the evidence established this point, since the testimony of Primitivo Díaz on the structure burglarized was to the effect that "I was doing some construction work in my mother's house." It is true that on cross-examination this witness answered affirmatively the question, "Was it under construction?" But further on, in the course of cross-examination, he said that he helped the carpenter "in my mother's house"; and, lastly, he testified "The next day, around 7 a.m., when I arrived at the place *where the house was being constructed,*" and that "at 7 a.m. I arrived *at my mother's house.*" (Italics ours.) From the entire testimony it is not difficult to conclude that an existing house was being repaired or enlarged rather than that a house was under construction. This conclusion is strengthened if we consider that evidence was introduced to the effect that the objects stolen were taken from a "room [of the house in question] having one door across which some boards were fastened with nails."

(2) Since, as stated above, both as a question of fact

and of law the structure in question was a "house" within the terms of § 408 of the Penal Code, refusal to give the instruction requested on "what constitutes a house" was in order.

(3) It is in this appeal that appellant for the first time points out the variance between the information in which the house burglarized is identified as "the house of Primitivo Díaz Vázquez"—a datum which the district attorney undoubtedly took from appellant's confession, without further verification—and the evidence consisting in the testimony of Díaz himself to the effect that the house was his mother's; that he lived "in Rosendo Matienzo Cintrón urbanization at A Street No. 27," while the house burglarized is situated "at 1006 Las Torres Street, Stop 18."

■■ It is well settled that in burglary cases the identification of the burglarized property is essential, and when it is identified as belonging to a person, without adding further data, and from the evidence it appears that it belongs to another, the variance is fatal. *Bynum* v. *State*, 137 So.2d 515 (Miss. 1962); *People* v. *Parker*, 27 Pac. 537 (Cal. 1901); *State* v. *Wright*, 95 S.W.2d 1159 (Mo. 1936); *People* v. *Webber*, 70 Pac. 1089 (Cal. 1902).[2] However, if from the evidence it appears that the structure was owned by the person named in the information as owner thereof, the variance is not fatal. *Bradley* v. *State*, 195 N.E.2d 347 (Ind. 1964); *Chapman* v. *State*, 353 S.W.2d 851 (Texas 1962). This doctrine is based on the fact that (a) the variance in question is unfair to the accused because he prepares to defend himself against an information involving certain prop-

---

[2] Under the present Rules of Criminal Procedure, the variance between the pleadings and the evidence shall not constitute ground for acquittal, and when it arises request may be made for proper amendments to eliminate it. If the court is of the opinion that the substantial rights of the defendant have been impaired, it shall postpone the trial to hold it before another jury or before the same court if the trial is not by jury. Rule 38(d).

erty and the evidence shows that it is different, that is, that no circumstance should be allowed to arise surprising to defendant; and further, that (b) the offense should be identified in such a way as to protect the defendant from a second prosecution for the same offense. *Gagne* v. *State*, 138 So.2d 90, 92 (Fla. 1962). A further requisite is that the variance must affect the substantial rights of the defendant. *People* v. *Díaz*, 61 P.R.R. 673 (1943). *Cf. Soto* v. *Superior Court, ante*, p. 505.

■ The evidence shows that Primitivo Díaz was, with respect to the house in question, in "possession which is rightful as against the burglar," as we stated in *People* v. *Molina*, 46 P.R.R. 99, 102 (1934), since he was in charge of the construction in his mother's house. The materials stolen belonged to him. He had purchased them and presumably took them to the work. Therefore, he exercised the custody of the construction; more specifically, he controlled the room from where appellant stole the materials. *Sallee* v. *State*, 1 P.2d 794 (Okl. 1931); *Chapman, supra.* Since it is evident that appellant knew the burglarized property as belonging to Primitivo Díaz and it was so identified in the information, we do not believe that Díaz' testimony on the ownership of the house is surprising by itself, or that it affected substantially the rights of appellant. *People* v. *Ramos*, 28 P.R.R. 749, 751 (1920).[3]

For the reasons stated, the conviction will be sustained.

---

[3] Since the identification of the burglarized property is such an essential fact to constitute the offense of burglary, the property must be adequately identified in the information. The most usual way of doing it is by indicating its location by street and number, ward, and municipality.